UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR PABLO MOLINA,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>ERIC ARNOLD, Warden,<br><br>　　　　　　　　　　Respondent. | Case No.: 16-CV-720 JLS (MDD)<br><br>**ORDER: (1) OVERRULING PETITIONER'S OBJECTIONS; (2) ADOPTING REPORT AND RECOMMENDATION; AND (3) DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF Nos. 6, 26, 28) |

Presently before the Court are: (1) Petitioner Hector Pablo Molina's First Amended Petition for Writ of Habeas Corpus, ("FAP", ECF No. 6); (2) Magistrate Judge Mitchell D. Dembin's Report and Recommendation ("R&R") advising that the Court deny Petitioner's Petition for Writ of Habeas Corpus, (ECF No. 26); and (3) Petitioner's Objections to the R&R ("Objs. to R&R", ECF No. 28). Respondent did not file a reply to Petitioner's Objections. Having considered the facts and the law, the Court (1) **OVERRULES** Petitioner's Objections, (2) **ADOPTS** the R&R in its entirety, and (3) **DENIES** Petitioner's Petition for Writ of Habeas Corpus.

/ / /

# BACKGROUND

Judge Dembin's R&R contains a thorough and accurate recitation of the factual and procedural histories underlying the instant Petition for Writ of Habeas corpus. (*See* R&R 2–8,[1] ECF No. 26.) This Order incorporates by reference the background as set forth therein.

# LEGAL STANDARDS

## I. Review of Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c); *see also United States v. Raddatz*, 447 U.S. 667, 673–76 (1980). In the absence of a timely objection, however, "the Court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 510 F.2d 196, 206 (9th Cir. 1974)).

## II. Review of Habeas Corpus Petitions Under 28 U.S.C. § 2254

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

Under § 2254(d)(1), federal law must be "clearly established" in order to support a habeas claim. Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . . ." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court's decision may be "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406. A state court decision does not have to demonstrate an awareness of clearly established Supreme Court precedent, provided neither the reasoning nor the result of the state court decision contradict such precedent. *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119–22 (2007).

Federal courts review the last reasoned decision from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991); *Hibbler v. Benedetti*, 693 F.3d 1140, 1145–46 (9th Cir. 2012). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The petitioner must establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (citation omitted). It is not within a federal habeas court's province "to reexamine state court determinations on state-law questions." *Hayes v. Ayers*, 632 F.3d 500, 517 (9th Cir. 2011) (citing and quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

Finally, § 2254 authorizes habeas relief where the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court." 28 U.S.C. § 2254(d)(2). This provision requires the petitioner to demonstrate by clear and convincing evidence that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. *Miller-El*, 537 U.S. at 340.

## ANALYSIS

**I.       Summary of the R&R Conclusion**

Judge Dembin recommends that the Court deny the Petition in its entirety. (R&R 1, ECF No. 26.) The Petition contains two claims for relief. (*Id.* at 9 (citing FAP 6–7, ECF No. 6).) First, Petitioner contends that the trial court erred by failing to disclose the full substance of Melvin Breaux's investigation, which also violated the prosecutor's *Brady* obligations. (*Id.*) Second, Petitioner contends that the trial court erred by denying Petitioner's motion to dismiss, which claimed that the arresting officers should have preserved his blood alcohol level ("BAC") by taking a blood sample at the time of his

arrest. (*Id.*) Judge Dembin ultimately concludes that the Petition should be denied because the appellate court's decision was neither unreasonable nor contrary to clearly established federal law. (*Id.* at 25, 32.)

Petitioner first argues that the Court of Appeal's decision finding no error in failing to disclose the information Detective McNamara revealed *in camera* and no *Brady* violation by the prosecutor were incorrect because Breaux was the key witness in the prosecution's case. (*Id.* at 18; *see also* FAP 6, ECF No. 6; Traverse 4, ECF No. 18.) Petitioner argues that Breaux's credibility was "key to the case" because he was the only witness to the murder and identified Petitioner as the killer. (*Id.* at 18–19 (citing Traverse 4, ECF No. 18).) Petitioner argues that the following testimony presented at the *in camera* hearing would have weakened Breaux's credibility and strengthened his defense that he did not kill David Craig:

> I know that Mr. Breaux used to be a New Orleans police office[r] and he was involved in an on-duty accident. He got addicted – this is coming from the victim – he got addicted to the pain meds.[ ]They moved out of New Orleans, actually came to California.[ ]He tried to . . .[]become a CHP officer, but he was turned down during the psychological for some anger issues. [p] In my opinion,[]Mr. Breaux's got a great amount of street sense."

(*Id.* at 19 (citing Traverse 5, ECF No. 18).) Respondent argues that the Court of Appeal reasonably concluded that there was no *Brady* violation because the prosecution did not have the information, the information was not material, and the prosecutor properly alerted the court and defense that Breaux was under investigation by another government agency. (*Id.* (citing ECF No. 13-1, at 2).)

Judge Dembin examined the appellate court's opinion and found that this withheld information did not amount to a *Brady* violation. (*See* R&R 20, ECF No. 26 ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must

5

have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).) As to the first component, Judge Dembin found that "[w]hile this information would bear on the credibility of a significant witness for the prosecution, Breaux's reliability was not determinative of Petitioner's guilt or innocence"; rather, there was overwhelming evidence permitting the jury to determine Petitioner's guilt. (*Id.* at 22; *see also id.* at 22–23 (recounting evidence).) Judge Dembin found that the second component of a *Brady* violation was met as applied to the Court, since the Court held an *in camera* hearing and did not disclose that information to Petitioner at trial, but not as to the prosecutor, since the prosecutor was not at the *in camera* hearing and thus could not have withheld this information. (*Id.* at 23–24.) Finally, Judge Dembin found that the third component of a *Brady* violation was not satisfied because, as discussed, the jury had overwhelming evidence to determine Petitioner's guilt even absent Breaux's testimony, so there was no resulting prejudice to Petitioner. (*Id.* at 23.) Thus Judge Dembin concluded that the "state court objectively and reasonably concluded that neither the trial court nor the prosecution erred in failing to disclose information about Breaux's past." (*Id.* at 25.)

Petitioner next argues that the trial court erred in denying his motion to dismiss on the grounds that arresting police officers should have preserved his BAC by taking a blood sample when they arrested him. (R&R 25–26, ECF No. 26.) Specifically, Petitioner argues that police officers should have taken his blood sample because they knew Petitioner was under arrest for murder and that intoxication was a defense to murder. (*Id.* at 29 (citing FAP 7, ECF No. 6).) Respondent argues that the state court reasonably concluded that the police had no duty to obtain a blood sample from Petitioner because (a) Petitioner's defense at trial was that he did not kill Craig, not that he was intoxicated; (b) there was no clearly established Supreme Court precedent on an affirmative duty to collect evidence; and (c) even if there were such precedent, Petitioner's claim fails because he cannot show either the exculpatory value of his blood sample or the police officers' bad faith in failing to take a blood sample. (*Id.* at 29 (citing ECF No. 13-1, at 27–31).)

///

6

16-CV-720 JLS (MDD)

Judge Dembin examined the appellate court's opinion and found that even assuming the police officers had a duty to collect Petitioner's blood sample under clear precedent, "Petitioner's blood sample, which purportedly would have shown that Petitioner was intoxicated, would not have had exculpatory value that was apparent at the time of Petitioner's arrest[, and] Petitioner also has not shown that police acted with bad faith in failing to take Petitioner's blood sample." (R&R 31, ECF No. 26; *see also id.* at 31–32 (recounting evidence to support this conclusion).) Thus, Judge Dembin concluded that the appellate court's decision to affirm the conviction "did not result in a decision contrary to federal law and was not an unreasonable application of federal law." (*Id.* at 32.)

## II. Summary of Petitioner's Objections

Petitioner outlines two objections to Judge Dembin's R&R, which track his two grounds for relief. While not entirely clear, Petitioner appears to object to the entirety of Judge Dembin's R&R. (*See generally* Objs. to R&R, ECF No. 28.)

## III. Court's Analysis

Because Petitioner appears to object to the entirety of Judge Dembin's R&R, the Court will review, *de novo*, Judge Dembin's R&R and Petitioner's underlying Petition. The Court organizes its analysis, as both Judge Dembin and Petitioner have, by Petitioner's claims for relief.

### A. Claim 1: Failure to Disclose Breaux's Background Information Learned at an In Camera *Hearing*

Petitioner first appears to object to the fact that the Court of Appeal applied the incorrect legal standard to this issue because, according to Petitioner, this is an issue of first impression. (Objs. to R&R 3, ECF No. 28; *see also* Lodg. No. 6, at 14, ECF No. 14-18 ("Assuming without deciding that analogizing to the *Pitchess* framework is appropriate, we conclude the trial court did not abuse its discretion by finding Breaux's status as a former police officer, his workplace injury and resulting addiction to pain medications, and his alleged anger management issues immaterial to this case.").) But Petitioner cites no authority demonstrating that the Court of Appeal applied the incorrect legal standard or

that its analysis under this framework was erroneous. Nevertheless, even assuming that was the case, Judge Dembin analyzed this issue under *Brady*, finding, contrary to Respondent's argument, that Petitioner's claim could be cognizable under the Due Process Clause and thus is an appropriate claim in a petition for a writ of habeas corpus:

> If Petitioner were to argue that the trial court erred in denying a *Pitchess* motion, Respondent would be correct that Petitioner's *Pitchess* claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). That is not what Petitioner argues. (*See* ECF Nos. 6, 18). Petitioner argues that the trial court erred in failing to disclose to Petitioner information, similar to *Pitchess* information, that was revealed in an *in camera* hearing. (ECF Nos. 6 at 6, 18 at 4-6). Denial of access to an investigative report on a key witness could present a cognizable claim to the extent it affects Petitioner's right to receive necessary exculpatory or impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972) (finding that impeaching evidence is exculpatory evidence within the meaning of *Brady*).

(R&R 19–20, ECF No. 26.) The Court agrees with Judge Dembin that Petitioner's evidentiary issue can be properly analyzed under *Brady* and its progeny.

The Due Process Clause requires the government to produce to the defense favorable evidence material to a criminal defendant's guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The California Supreme Court has stated that *Pitchess* procedures parallel the prosecution's obligations under *Brady*. *Williams v. Malfi*, No. CV 06-4367-DOC (JTL), 2008 WL 618895, at *10 (C.D. Cal. Jan. 25, 2008) (citing *City of L.A. v. Superior Court*, 29 Cal. 4th 1, 14 (2002)).

Under *Brady*, evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *U.S. v. Bagley*, 473 U.S. 667, 682 (1985)). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is

impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

"*Brady/Giglio* information includes 'material . . . that bears on the credibility of a significant witness in the case.'" *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (quoting *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1461 (9th Cir. 1993)). Impeachment evidence is favorable to the accused "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." *Id.* (citation and quotation marks omitted).

Petitioner objects to Judge Dembin's conclusion that failure to disclose Breaux's background information learned at an *in camera* hearing was not a *Brady* violation. (Objs. to R&R 4–5, ECF No. 28.)

The Court disagrees. As to the first component of a *Brady* violation, Judge Dembin properly determined that Breaux's reliability was not determinative of Petitioner's guilt or innocence. In particular Judge Dembin found there was overwhelming evidence that permitted the jury to determine Petitioner's guilt, such as:

> Macagno testified that Petitioner became "agitated," "rough," "mad" and violent. (Lodg. No 2 at 356, 357, 359, 361). Macagno also testified that Petitioner was making stabbing demonstrations and saying he wanted to "kill the guy." (*See id.* at 359-64, 374). When shown a picture of the hunting knife used to kill Craig, Macagno testified that it was his knife and he gave it to Petitioner the day before Craig's murder. (*Id.* at 378-79).
> 
> San Diego Police Officer Katrina Young testified that when her partner went to detain Petitioner, she immediately noticed blood on Petitioner's shoes and pants and when she looked in Petitioner's car she immediately saw a knife in between the driver's and passenger's seat. (*Id.* at 493-94). Chula Vista Police Officers Johnathon Deering and Michael Varga also testified that Petitioner had dried blood on his pants and blood spatter on his shoes. (*Id.* at 502-03, 533-34). Additionally, Officer Varga testified that he saw a knife in Petitioner's car. (*Id.* at 537-38).

> Chula Vista Detective David Beatty testified that the shoes Petitioner wore at the time of the arrest had a tread pattern that was "very similar" to the dirt impression of tread patterns at the scene of the crime. (*Id.* at 669-71). DNA analyst Monica Ammann testified that the blood on Petitioner's car's steering wheel, Petitioner's shoes and the knife found in Petitioner's car matched the victim's DNA. (*Id.* at 862-75).

(R&R 22–23, ECF No. 26.)

Additionally, Judge Dembin properly found that the second component of a *Brady* violation is met as applied to the Court because it held an *in camera* hearing and withheld information from that hearing from Petitioner.[2] (*Id.* at 23 (citing *Strickler*, 527 U.S. at 281–282 (1999) (stating that the second component of a true *Brady* violation is that the state withheld evidence)).) Judge Dembin also properly found that the second component of a *Brady* violation is not met as to the prosecutor because she was not present at the *in camera* hearing and otherwise did not know the information revealed therein. (*Id.* at 23–24.)

Finally, Judge Dembin properly found that the third *Brady* component is not satisfied because the withholding of this evidence did not prejudice Petitioner's case. (*Id.* at 24.) As discussed above, there was overwhelming evidence for the jury to find Petitioner guilty of murder despite not having this additional evidence that would ostensibly be used to attack Breaux's character. (*Id.*) Furthermore, the defense vigorously impeached Breaux's character at trial highlighting, among other things, that Breaux was homeless, "excluded" from his former marital residence, and denied using drugs but later admitted to using drugs. (*Id.* at 24–25 (collecting citations and additional evidence).) Thus, the Court agrees with Judge Dembin that "[i]t is unlikely that the comparatively neutral fact that Breaux used to be a police officer who became addicted to pain medications and could not obtain employment as a CHP officer due to anger issues would have altered the jury's determination of his credibility." (*Id.* at 25 (citing, e.g., *Silva v. Brown*, 416 F.3d 980, 989–

---

[2] But, of course, this is insufficient because all three components are required for a *Brady* violation.

90 (9th Cir. 2005) (undisclosed evidence of witness's competency issues was material for its "potency" and ability to raise "new and more powerful doubts about the reliability of [the witness's] testimony")).)

In sum, the Court agrees with Judge Dembin's conclusion that the "state court objectively and reasonably concluded that neither the trial court nor the prosecution erred in failing to disclose information about Breaux's past." (*Id.* at 25.) Accordingly, the Court **OVERRULES** Petitioner's first objection.

### B. Claim 2: Error in Denying Petitioner's Motion to Dismiss

While not particularly clear, Petitioner's second objection appears to be that the trial court erred in denying his motion to dismiss on the grounds that the officers who arrested him should have preserved his BAC level by taking a blood sample at the time of arrest. (*See* Objs. to R&R 6–9, ECF No. 28.)

In general, law enforcement officials have a duty to preserve "evidence that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). While the Supreme Court has not directly addressed the duty to collect evidence, some courts have held that *Trombetta* includes the duty to collect evidence. *Miller v Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989) (finding that the failure to collect potentially exculpatory evidence could be a due process violation). This duty applies only to "material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources." *Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001) (citing *Trombetta*, 467 U.S. at 489). Additionally, the failure to preserve potentially exculpatory evidence amounts to a due process violation only when the petitioner "can show bad faith." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Miller*, 868 F.2d at 1120 ("Since, in the absence of bad faith, the police's failure to *preserve* evidence that is only potentially exculpatory does not violate due process, then a fortiori neither does the good faith failure to *collect* such evidence violate due process." (emphasis in original)). Bad faith "turns on the government's knowledge of the apparent exculpatory value of the evidence

at the time it was lost or destroyed." *Martinez v. Barnes*, No. 2:12-cv-2975 KJM GGH P, 2013 WL 5773108, at *5 (E.D. Cal. Oct. 24, 2013) (citing *Youngblood*, 488 U.S. at 56–57; *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993)).

As discussed above, *supra* Part I, Judge Dembin found that <u>even assuming</u> the police officers had a duty to collect Petitioner's blood sample, "Petitioner's blood sample, which purportedly would have shown that Petitioner was intoxicated, would not have had exculpatory value that was apparent at the time of Petitioner's arrest[, and] Petitioner also has not shown that police acted with bad faith in failing to take Petitioner's blood sample." (R&R 31, ECF No. 26.)

The Court agrees with both of Judge Dembin's findings. As to the first, various officers testified they were unaware of Petitioner's allegedly intoxicated state at the time they arrested him:

> San Diego Police Officer Jason Tsui testified he did not smell any alcohol on Petitioner at the time of the car accident and "didn't think [any sobriety testing] was necessary" because Petitioner did not appear to be under the influence. (Lodg. No. 2 at 475-77). San Diego Police Officer Katrina Young also testified that she did not notice the odor of alcohol on Petitioner when she was within a foot of him and he exhibited no objective symptoms of intoxication. (*Id.* at 489). Additionally, Chula Vista Police Officer Johnathon Deering testified that while he was enclosed in his patrol car with Petitioner for 20 minutes, he did not smell alcohol and Petitioner did not appear to be under the influence of either alcohol or a controlled substance. (*Id.* at 501-02). Chula Vista Police Officer Michael Varga also testified that he did not detect the odor of alcohol coming from Petitioner and did not notice objective symptoms of intoxication. (*Id.* at 535).
>
> Chula Vista Police Officer Ricardo Cruz testified that after Macagno told him Petitioner drank bourbon, he paid particular attention to Petitioner's mannerisms. (*Id.* at 619). Officer Cruz explained that Petitioner responded to commands immediately, "which struck [Officer Cruz] as odd. [He] thought if this man is inebriated he is going to take a while to respond, he is going to

> stagger over . . . ." (*Id.*). Officer Cruz stated that Petitioner's gait as he walked while handcuffed was "perfect," which surprised Officer Cruz because "most people that are inebriated will have a stagger gait, would be off balance." (*Id.* at 620). Officer Cruz explained that he was looking for the objective symptoms of intoxication and did not see any. (*Id.* at 621). After lengthy questioning regarding Petitioner's level of intoxication, Officer Cruz testified: "Let me put it to you this way: If this contact had occurred out in the field and he was driving under the same circumstances, had he not been arrested, I would have handed him his keys back. That is how confident I was that he was not under the influence." (*Id.* at 633).

(R&R 31–32, ECF No. 26.) While intoxication is a defense to murder and a blood sample could have exculpatory value, these officers' testimony demonstrates that it was not apparent to them at the time of Petitioner's arrest that he was intoxicated, and thus it was not apparent to them that Petitioner's blood sample would have exculpatory value. Second, Petitioner has not demonstrated in his Petition, his Traverse, or his Objections that the police officers acted in bad faith in failing to take a blood sample to preserve his BAC.

In sum, the Court agrees with Judge Dembin's conclusion that the "state court's adjudication did not result in a decision contrary to federal law and was not an unreasonable application of federal law." (*Id.* at 32.) Accordingly, the Court **OVERRULES** Petitioner's second objection.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# CONCLUSION

For the reasons stated above, the Court (1) **OVERRULES** Petitioner's Objections, (2) **ADOPTS** the R&R in its entirety, and (3) **DENIES** Petitioner's Petition for Writ of Habeas Corpus. The Court **DENIES** a certificate of appealability because the issues are not debatable among jurists of reason and there are no questions adequate to deserve encouragement. *See Miller-El*, 537 U.S. at 327. The Clerk of Court **SHALL** enter judgment denying the Petition.

**IT IS SO ORDERED.**

Dated: April 14, 2017

Hon. Janis L. Sammartino
United States District Judge